UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ROBERTA LYNN CRADDOCK,    ) | CASE NO. 1:14CV1328 |
|                                                      ) | |
|           Plaintiff,                         ) | JUDGE JAMES S. GWIN |
|                                                      ) | Magistrate Judge George J. Limbert |
|     v.                                          ) | |
|                                                      ) | |
| CAROLYN W. COLVIN[1],              ) | Report and Recommendation of |
| ACTING COMMISSIONER OF    ) | Magistrate Judge |
| SOCIAL SECURITY,                      ) | |
|                                                      ) | |
|           Defendant.                     ) | |

Roberta Lynn Craddock ("Plaintiff"), seeks judicial review of the final decision of Carolyn W. Colvin ("Defendant"), Acting Commissioner of the Social Security Administration ("SSA"), denying her application for Disability Insurance Benefits ("DIB").  ECF Dkt. #1.  For the following reasons, the undersigned recommends that the Court AFFIRM the ALJ's decision and dismiss Plaintiff's case in its entirety with prejudice.

I.     **PROCEDURAL HISTORY**

On April 25, 2011, Plaintiff filed an application for DIB, alleging disability beginning October 30, 2010 due to back pain, arthritis in her hands, shoulder, back and knee, diabetes, depression, diabetic neuropathy, high blood pressure, torn ligaments in her knees, carpal tunnel syndrome ("CTS") in both hands, and a disc problem in her back that pinches her leg.  ECF Dkt. #11, Transcript of proceedings ("Tr.") at 137-138, 168.  The SSA denied Plaintiff's application initially and on reconsideration.  *Id*. at 69-97.  Plaintiff requested an administrative hearing, and on October 16, 2012, the ALJ conducted an administrative hearing and accepted the testimony of Plaintiff, who was represented by counsel, and a vocational expert ("VE").  *Id.* at 29-68, 110.  On January 4, 2013, the ALJ issued a Decision denying benefits.  Tr. at 12-23.  Plaintiff requested review of the Decision, and on April 22, 2014, the Appeals Council denied review.  Tr. at 1-7.

---

[1]On February 14, 2013, Carolyn W. Colvin became the acting Commissioner of Social Security, replacing Michael J. Astrue.

On June 19, 2014, Plaintiff filed the instant suit seeking review of the Decision. ECF Dkt. #1. On October 15, 2014, Plaintiff filed a brief on the merits. ECF Dkt. #13. On December 12, 2014, Defendant filed a brief on the merits and on January 9, 2015, Plaintiff filed a reply brief. ECF Dkt. #s 15, 17.

## II. **SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION**

In his decision, the ALJ determined that Plaintiff suffers from obesity, mild degenerative changes of the lumbar spine, lumbar facet arthropathy, lumbar spondylosis, diabetes mellitus, diabetic peripheral neuropathy, hypertension, hyperlipidemia, right knee degenerative joint disease ("DJD"), obstructive sleep apnea, and bilateral CTS which were severe impairments under 20 C.F.R. §404.1520(c). Tr. at 23. The ALJ further determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, 20 C.F.R. § 404.1520(d), 404.1525 and 404.1526 ("Listings"). *Id.* at 15-17.

The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work with the following limitations: lifting and carrying up to twenty pounds occasionally and ten pounds frequently; standing, walking and sitting up to six hours per eight-hour workday; occasionally climbing ramps and stairs; no climbing of ladders, ropes and scaffolding; frequently balancing; occasionally stooping, kneeling, crouching, and crawling; avoiding all exposure to hazardous machinery and unprotected heights; and frequent bilateral handling and fingering. Tr. at 17. The ALJ ultimately concluded that Plaintiff could perform her past relevant work as a collections/billing clerk, outside sales representative, courier, and accounts receivable clerk. *Id.* at 21. As a consequence, the ALJ found that Plaintiff had not been under a disability as defined in the SSA and was not entitled to benefits.

## III. **STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS**

An ALJ must proceed through the required sequential steps for evaluating entitlement to benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

> 2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));
>
> 3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));
>
> 4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));
>
> 5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937, citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citation omitted). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the

record upon which the ALJ could have found plaintiff disabled.  The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001).  However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record."  *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (citations omitted).

## V.     RELEVANT MEDICAL HISTORY

Since Plaintiff's assertions of error concern only the ALJ's failure to address the statement of her nurse practitioner Lynn Gaddis, CNP, and the third-party statement of her friend, Lynn Cuellar, the Court will limit Plaintiff's medical and other history relevant to these assertions.

On December 14, 2011, Plaintiff presented to Dr. Philippe Berenger, M.D. and CNP Lynn Gaddis at the request of Dr. Zanotti, her treating physician, for treatment at the Cleveland Pain Clinic for her complaints of back pain with hip and leg pain with numbness and tingling. Tr. at 409. It was noted that Plaintiff reported having the pain for years and she described the pain as chronic, aching, burning and throbbing with radiation. *Id*. She rated the pain as a 5 on a 10-point scale. *Id*. She explained that her low back pain was increased by sitting, standing, and walking and relieved by lying down. *Id*. She indicated that she could walk a short distance before having to sit down and she could stand for only a few minutes before having to sit. *Id*.

Upon examination, Plaintiff's musculoskeletal exam was positive for low back pain and she had swelling in her knees, but she had unlimited lumbar flexion, rotation, reflexes, and side bending, a normal gait, normal toe and heel walking, and negative straight-leg raising. Tr. at 411. Her hip range of motion was within normal limits without pain, but her Faber's test[2] was positive. *Id*. Dr. Berenger's and CNP Gaddis' diagnoses for Plaintiff included: lumbar spondylosis with no neurological deficits and negative nerve root tension signs; diabetes mellitus; myalgia; hypothyroidism; sleep apnea; and obesity. *Id*. at 411-412.  Plaintiff was referred for a diet

---

[2] The Faber Test involves having the tested leg flexed, abducted and externally rotated and depending upon the pain elicited from the test, it suggests either a hip joint disorder or a sacroiliac dysfunction. Segen's Medical Dictionary 2012, *see* medical-dictionary.thefreedictionary.com/FABER+test.

-4-

consultation, physical and water therapy, blood tests, an x-ray of the lumbar spine and a sleep study. *Id*. at 412-413.  Some adjustments were made to Plaintiff's medications.  *Id*. at 413.

A lumbar spine x-ray taken on December 30, 2011 showed mild degenerative changes as mild curvature was noted, maintained disc spaces and heights, with small anterior osteophytes in lower thoracic and L1 through L3 levels, with moderate facet sclerosis L3 to S1, and tained sacroiliac joints.  Tr. at 415.  Plaintiff's sleep study showed severe obstructive sleep apnea.  *Id.* at 417.

On February 1, 2012, Plaintiff followed up with Dr. Berenger and reported that her back symptoms had not changed, although Neurontin prescribed for her helped with the shooting pain in her legs and feet.  Tr. at 389-390.  She rated her pain as a 6 on a 10-point scale and indicated that she wanted to try water therapy.  *Id*. at 390.  Dr. Berenger's impressions were myalgia/fibromyalgia, diabetes mellitus, lumbar spondylosis, lumbosacral spondylosis without myelopathy, and obstructive sleep apnea.  *Id.*  He noted that the dietary consultation was pending, as well as Plaintiff's bloodwork and he was going to continue her on Neurontin and hold off on other modifications pending water therapy and other test results.  *Id*.

Plaintiff began performing water therapy once per week for four weeks followed by physical therapy between March 2012 and May 2012.  Tr. at 387.  It was noted that Plaintiff reported feeling better after the exercises and had less pain, but she said that she was always in pain.  *Id*. at 380, 438.  She rated her pain as a 6 out of 10.  *Id*. at 438.

On May 30, 2012, Plaintiff followed up with Dr. Berenger and CNP Gaddis and reported that her back and radiation symptoms to her legs had not changed.  Tr. at 430.  She rated her pain as a 5 out of 10 on a constant daily basis.  *Id*.  Examination showed normal upper and lower extremity strength, negative nerve root tension signs, but lumbar facet loading pain with extension and palpation.  *Id.* at 431.  Dr. Berenger diagnosed myalgia, lumbar spondylosis and lumbar facet arthropathy and he ordered Plaintiff scheduled for a bilateral lumbar facet medial nerve branch block at L3, L4 and L5.  *Id.*  Her Neurontin was also continued as she reported that it helped the shooting and burning pain in her hands, legs and feet.  *Id*.

On June 1, 2012, Plaintiff presented to Dr. Berenger and CNP Gaddis for her nerve block. Tr. at 455. She rated her pain intensity as a 5 out of 10. *Id.* Her diagnoses were lumbosacral spondylosis without myelopathy and diabetes mellitus. *Id*. at 455-456.

On June 22, 2012, Plaintiff presented to Dr. Berenger and CNP Gaddis for her second nerve block. Tr. at 452. She reported that her pain intensity was 5 out of 10. *Id*

On October 2, 2012, Plaintiff presented to CNP Gaddis and reported that the first nerve block was wonderful, but the second one lasted only a few days. Tr. at 461. Plaintiff indicated that she still had low back pain that she rated as a 7 on a 10-point scale and it was a squeezing/twisting pain that radiated down both buttocks/hips and up to the midback. *Id.* CNP Gaddis' examination showed that Plaintiff had normal lower extremity strength, negative nerve root tension signs and low back pain with sitting, lumbar extension and palpation. *Id.* at 462. Her impressions were lumbar spondylosis and facet arthritis of the lumbar region. *Id.* CNP Gaddis noted that Plaintiff had difficulty with sitting or standing for long periods of time. *Id.* Her plan was to perform a lumbar facet radiofrequency ablation ("RFA")[3] on the right and then the left at L3,L4, and L5 one to two weeks apart and to have Plaintiff use a TENS unit. *Id.*

On November 6, 2012, Plaintiff had a lumbar spine MRI which showed: a bulging disc at T11-T12 mildly flattening the ventral aspect of the cord, with patent neural foramina; a bulging disc, facet and ligamentous hypertrophy at L4-L5 resulting in minimal central canal narrowing and moderate left neural foraminal narrowing; and L5-S1 patent canal with facet arthropathy and rostrocaudal facet migration resulting in bilateral moderate neural foraminal narrowing. Tr. at 473-474. The final impression was degenerative changes most severe at L4-L5 and L5-S1. *Id.* at 474.

## VI. HEARING TESTIMONY

At the hearing before the ALJ, Plaintiff reported that her biggest impediment to working was her back pain because she could not stand or sit for periods of time without having to lie back to

---

[3] A lumbar radiofrequency ablation is a procedure that uses radio waves to stop the lumbar medial branch nerve from transmitting pain signals from the injured facet joint to the brain. *See* <my.clevelandclinic.org/Lumbar-Radiofrequency-Ablation.

reduce some of the pain. Tr. at 39-40. Plaintiff testified that the pain medications that she was taking did not help and the injections helped for only short periods of time. *Id*. at 40. She was living with one of her daughters with her brother and sister-in-law. *Id*. at 48.

Plaintiff testified that she last worked as an account executive at a payroll company in Georgia in 2009 or 2010 and she came to Cleveland, Ohio thereafter when her job was no longer available to her. Tr. at 41. She worked for this company from 1999 to 2010. *Id*. at 44-45. She reported that her boss indicated that he was going to let her go by the end of the year because she "could no longer meet up to the requirements needed." *Id.* She then told her boss that she was going to move to Ohio and he informed her that he would let her go early and pay her until the end of the year. *Id.* at 41-42. Plaintiff explained that she was the only employee that her employer had in Georgia and there was a downturn in business because a lot of the companies that used their payroll services had gone out of business and she was no longer to travel to the different clients' offices to pick up their paperwork and drop off checks. *Id*. at 42. She indicated that she had a home office and was mostly driving while on the job but was able to recuperate from driving so much by lying down when she came home. *Id*.

Plaintiff indicated that when she came to Cleveland, she worked as a nanny for a friend from March to April of 2011. Tr. at 43. She reported that she was 5'4" tall and weighed 318 pounds. *Id*. at 46. She stated that she cannot be on her feet for more than five to ten minutes and she could not lift more than ten pounds, but could lift twenty pounds with pain. *Id*. at 46-47. She testified that she was able to care for her personal hygiene, cook and clean a little, wash dishes and do laundry with her daughter's help, she could drive, but she does not shop unless she uses one of the chairs to proceed through the store. *Id*. at 49. She was able to use a computer and she watched her brother's children when they came home from school everyday. *Id.* at 50.

The VE then testified. Tr. at 53. After clarifying the nature of Plaintiff's positions at her prior jobs, the ALJ asked the VE to assume a hypothetical individual with the same age, education and work experience as Plaintiff, with a light level work restriction, and limitations to: occasional climbing of ramps and stairs; never climbing ladders, ropes or scaffolds; frequently balancing; occasionally stooping, kneeling, crouching and crawling; and avoiding all exposure to hazardous

-7-

machinery and unprotected heights. *Id.* at 58-60. The ALJ asked the VE whether such a hypothetical person could perform any of Plaintiff's past relevant employment and the VE responded that such a person could perform Plaintiff's past relevant work as a collections/billing clerk, accounts receivable clerk, outside sales representative, and courier. *Id.* at 55-58.

The ALJ modified the hypothetical person by adding a limitation to standing and walking up to four hours of an eight-hour workday rather than the light limitation of up to six hours of an eight-hour workday. Tr. at 62. The VE responded that such a person could still perform the collections/billing clerk position and the accounts receivable clerk position as they were sedentary jobs. *Id*. She also identified other jobs existing in significant numbers in the national economy that such a person could perform, including the jobs of food and beverage order clerk, charge account clerk and document preparer. *Id*. at 62-63.

The ALJ modified the hypothetical person again, including the same restrictions as the first hypothetical, except that a sedentary exertional level was included providing that the person could lift only up to ten pounds occasionally, could stand and walk up to two hours per eight-hour workday, and could sit for up to six hours in an eight-hour workday. Tr. at 63-64. The ALJ testified that the sedentary jobs would still remain available for this hypothetical person. *Id*. at 64.

The VE thereafter testified that none of her answers would change if the ALJ presented a fourth hypothetical person changing the ability of never crouching and crawling to occasionally crouching and never crawling. Tr. at 64. She also stated that none of her answers would change if the ALJ added a fifth hypothetical person to include frequent handling and fingering with bilateral hands. *Id*. The VE testified that jobs would be available to the sixth hypothetical individual who the ALJ stated would miss three or more days of work due to their impairments per month, but the VE noted that the issue would be the ability to sustain the job as employers do not tolerate that kind of absenteeism. *Id*. at 64-65.

## VII. LAW AND ANALYSIS

### A. CNP GADDIS

Plaintiff asserts that the ALJ erred when he ignored the opinion of CNP Gaddis who reported that Plaintiff had "difficulty sitting or standing for long periods of time." ECF Dkt. #13 at 20-22.

-8-

An ALJ must adhere to certain standards when reviewing medical evidence in support of a claim for social security. Most importantly, the ALJ must generally give greater deference to the opinions of the claimant's treating physicians than to those of non-treating physicians. SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Wilson*, 378 F.3d at 544. A presumption exists that the opinion of a treating physician is entitled to great deference. *Id.*; *Rogers, supra*, at 243 (6th Cir. 2007). On the other hand, "[o]pinions from nontreating and nonexamining sources are never assessed for 'controlling weight.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). The ALJ will evaluate every medical opinion received regardless of its source, and if he or she does not attribute controlling weight to a treating medical source, a number of factors will be evaluated in order to determine the weight to give to the medical opinion, including the examining relationship, specialization, consistency, and supportability. *Id.,* citing 20 C.F.R. §404.1527(c). Other factors "which tend to support or contradict the opinion" may also be considered in assessing any type of medical opinion. *Id.*

CNP Gaddis as a nurse practitioner is considered an "other source" and not an "acceptable medical source" under the Social Security Regulations. *See* 20 C.F.R. §§ 404.1513(a),(d). Although information from "other sources" cannot establish the existence of a medically determinable impairment, their information "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." Social Security Ruling ("SSR") 06-03p. SSR 06-03p discusses opinion evidence from "acceptable medical sources" and from "other sources" and highlights the importance of some "other sources," such as nurse practitioners:

> These regulations provide specific criteria for evaluating medical opinions from "acceptable medical sources"; however, they do not explicitly address how to consider relevant opinions and other evidence from "other sources" listed in 20 CFR 404.1513(d) and 416.913(d). With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

SSR 06-03p.

In evaluating the opinions of "other sources" who have seen the claimant in a professional capacity, the ALJ should consider how long the source has known the individual, how frequently the source has seen the individual, how consistent the opinion of the source is with other evidence, how well the source explains the opinion, and whether the source has a specialty or area of expertise related to the individual's impairment. SSR 06-03p; *see also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir.2007). SSR 06–03p further provides that ALJs "generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the [ALJ's] reasoning, when such opinions may have an effect on the outcome of the case." SSR 06–03p.

The undersigned recommends that the Court find that the sitting and standing limitation statements made by CNP Gaddis in her October 2, 2012 treatment note are not opinions, but rather are her documentation of Plaintiff's subjective reports of pain and resulting limitations. The relevant section of CNP Gaddis' October 2, 2012 treatment note supports such a finding as it provides:

> PAIN:
>
> Pain Yes. Location: low back. Radiates down both buttocks/hips and up to midback
>
> pain a 7 on a pain scale of 1-10. Patient describes pain as squeezing/twisting to the present time occurring daily.
>
> Sitting - can't sit for more than 30 minutes
>
> Standing - can't stand for more than 10 minutes
>
> Patient also has carpal tunnel in both hands; as well as arthritis. Weather affects her pain

*Id.* The context surrounding the sitting and standing limitations indicates that CNP Gaddis was noting Plaintiff's reports concerning the description of her symptoms and the limitations resulting therefrom. Accordingly, the undersigned recommends that the Court find that the sitting and standing limitation statements in CNP Gaddis' October 2, 2012 treatment note are not opinions or a medical source statement of CNP Gaddis. Thus, the undersigned recommends that the Court find that the ALJ did not err in failing to address these statements since they are not opinions.

Should the Court choose to find that these statements are more than treatment notes documenting a subjective report by Plaintiff, the undersigned recommends that the Court find that any error by the ALJ in failing to address CNP Gaddis' statement is harmless error. The undersigned points out that the ALJ did cite to the exhibit in which the treatment notes of Dr. Berenger and CNP Gaddis are found. Tr. at 19-20, citing Tr. at 377-418. He also cited to particular parts of the October 2, 2012 treatment note containing CNP Gaddis' sitting and standing statements as he indicated that Plaintiff had reported that her first nerve block injection was wonderful, but the second one lasted only a few days. *Id.* at 20. This statement was documented by CNP Gaddis in her October 2, 2012 treatment note. Thus, while the ALJ did not specifically identify CNP Gaddis or the sitting and standing limitation statements, he did consider the treatment note and surrounding notes concerning Plaintiff's treatment with Dr. Berenger and CNP Gaddis.

Nevertheless, SSR 06-03p provides that the ALJ's opinion "should reflect the consideration of opinions from medical sources who are not 'acceptable medical sources.'" SSR 06-03p. The Ruling notes that the ALJ "generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Id*. The Sixth Circuit Court of Appeals noted in *Cruse v. Comm'r of Soc. Sec*., 502 F.3d 532, 541 (6th Cir.2007) that "[a]s it stands, the ALJ's decision was devoid of any degree of specific consideration of nurse practitioner Hasselle's functional assessments." The court explained that, "[f]ollowing SSR 06–03P, the ALJ should have discussed the factors relating to his treatment of Hasselle's assessment, so as to have provided some basis for why he was rejecting the opinion." *Id*. Thus, if the Court finds in the instant case that CNP Gaddis' October 2, 2012 document is an assessment or an opinion, the ALJ in the instant case should have indicated the weight that he gave to the opinion and he should have explained the weight so given. The ALJ did not do so in this case.

However, even if the ALJ committed error, the undersigned recommends that the Court find that the error was harmless error as substantial evidence supports the ALJ's determination that the objective medical findings and Plaintiff's daily living activities did not support a limitation in

-11-

Plaintiff's abilities to stand, walk or sit less than six hours in an eight-hour workday. Tr. at 21. The ALJ pointed to objective evidence showing mild degenerative changes of the lumbar spine, lumbar facet arthropathy and lumbar spondylosis, for which Plaintiff was prescribed pain medication and physical and water therapy that seemed to help until she lost her transportation and could no longer attend, and she received injections that she reported initially significantly helped but by October 2012, the relief from the second injection lasted only for a few days. *Id.* at 20-21. The ALJ also noted clinical findings showing Plaintiff's normal strength in her lower and upper extremities, normal deep tendon reflexes, normal range of motion, and no neurological deficits. *Id*. at 20, citing Tr. at 298-304. He further cited to essentially minimal clinical findings by Plaintiff's treating physician Dr. Palma, who found normal extremity strength, normal deep tendon reflexes and range of motion. *Id*. at 20. Finally, the ALJ also considered Plaintiff's reported daily activities, which included working full-time as a nanny, caring for her nieces and nephews, using the computer, making jewelry, driving, cooking and washing dishes. *Id*. at 18, 20. Based upon the ALJ's decision and the record, the undersigned recommends that the Court find that substantial evidence supports the ALJ's determination that Plaintiff's abilities to sit, stand or walk were limited to six hours per eight-hour workday and not less than that.

### **B.** **THIRD-PARTY STATEMENT**

Plaintiff also asserts that the ALJ erred in failing to address a third-party statement made by her friend, Lynn Cuellar. ECF Dkt. #13 at 22-23. Plaintiff explains that in her statement, Ms. Cuellar described her observance of Plaintiff's constant back pain and the fact that Plaintiff sits in the lobby at church rather than in the chapel during services because the lobby chairs are more padded, yet Plaintiff still looks like she is in pain and looks like she is fighting back tears due to her back pain. *Id*. at 22. Plaintiff concludes that the ALJ should have addressed this letter in his decision because it constitutes additional evidence of her inability to sit even for the length of a church service once per week. *Id*.

Section 404.1513 (d) of Title 20 of the Code of Federal Regulations provides that other sources may provide evidence to show the severity of a claimant's impairment and how it impacts a claimant's ability to work. 20 C.F.R. § 404.1513(d). "Other sources" include non-medical sources

such as spouses, parents, other care-givers, siblings, relatives, friends, neighbors and clergy. *Id*. SSR 06–3p provides that an ALJ should consider evidence from non-medical sources who have not seen a claimant in a professional capacity and the ALJ may consider "such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that support or refute the evidence." SSR 06–3p. However, the Sixth Circuit has held that "an ALJ can consider every piece of evidence without addressing [all the evidence] in his opinion." *Kornecky v. Comm'r of Soc. Sec*, 167 Fed. App'x 496, 507–508 (6th Cir. 2006).

The ALJ explicitly stated in his decision that he carefully considered "all of the evidence" and "the entire record." Tr. at 12, 14, 17. While he should have addressed Ms. Cuellar's opinion in his decision, the ALJ's failure to directly address this evidence does not require remand. *See Cadle v. Astrue*, No. 5:10CV190, 2011 WL 3289787, at *4 (N.D.Ohio July 29, 2011) (while ALJ analysis should have directly addressed third-party questionnaires, it did not require remand), citing *Patrick v. Astrue*, No. 07–161–JBC, 2008 WL 3914921 (E.D.Ky.Aug.19, 2008) (finding that remand was not warranted due to the ALJ's failure to directly address the third-party statements in his written decision). In addition, the ALJ's failure to address the letter is not reversible error since he provided a lengthy discussion of the lack of objective evidence supporting the debilitating impact of Plaintiff's impairments. *Pasco v. Comm'r of Soc. Sec*., 137 Fed. App'x 828, 842, 2005 WL 1506343, at **11 (6th Cir.2005), unpublished. (ALJ did not commit reversible error in failing to specifically mention letter from claimant's mother since he provided lengthy discussion of the lack of objective evidence supporting the claimed physical limitations).

For these reasons, the undersigned recommends that the Court find that the ALJ's failure to address Ms. Cuellar's letter did not constitute reversible error.

## VIII. CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the Court AFFRIM the ALJ's decision and dismiss Plaintiff's case in its entirety with prejudice.

DATE: June 17, 2015

                                        */s/George J. Limbert*
                                        GEORGE J. LIMBERT
                                        UNITED STATES MAGISTRATE JUDGE

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).